### WESTGATE OIL CO. et al. v. McABEE, Adm'x.

No. 27468. Nov. 30, 1937.

Rehearing Denied Jan. 18, 1938.

Thomas H. Owen and Lynn J. Bullis, Jr., for plaintiffs in error.

Suits & Jeffery, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Oklahoma county upon a verdict of a jury in favor of the plaintiff, Lenora McAbee, administratrix of the estate of Leola McCord, deceased, and against the defendants, Westgate Oil Company, a corporation, Natural Gas Development Corporation, a corporation, and G. L. Gallaspy. The defendants have appealed to this court.

The parties herein will be referred to as they appeared in the trial court.

The plaintiff alleged in her petition that the high-pressure gas line of the defendant, under the alley that ran in the rear of the house in which deceased was living and running in close proximity to the sewer line, broke and the gas escaping therefrom filled the house occupied by the deceased; that deceased arose about 5:30 o'clock in the morning and struck a match and that instantly an explosion took place, wrecking said house and causing deceased to be severely burned, from the effect of which she died in about three days thereafter. The plaintiff's theory is that the escaping gas either followed the crevice in the ground along the sewer line or entered the sewer lines and entered the bathroom through or along the sewer pipes.

The defendants answered by general denial. They here contend that the gas escaping from their line could not have gathered in the house of the deceased in such a manner and quantity as to cause the explosion. This contention seems to be based on the condition of the rooms of the house after the explosion and, also, the construction of the foundation of the building. They contend that the gas causing the explosion must have come from some source other than from defendants' gas line.

The defendants have presented their assignments of error under six separate propositions.

It is first contended that the trial court erred in refusing to declare a mistrial on the motion of defendants during the progress of the trial. This contention is based upon the manner in which the plaintiff examined the defendants' witness Earl Fox. The counsel for defendants introduced witness Earl Fox, an engineer, for the purpose of proving, among other things, that the escaping gas from the high-pressure line of defendants had not accumulated in the house where the explosion occurred. The examination of the witness by defendants began by attempting to show that witness was employed by the State Fuel Supply Company and that his company had no interest in the case nor the outcome of the litigation; that witness had no connection whatever with either the Westgate Oil Company or the Natural Gas Development Corporation and that his company had no gas lines in the vicinity where the explosion took place. The witness than testified relative to his going upon the premises after the explosion and making careful investigation of the cause and result of the explosion. Witness then gave his opinion that there was no connection between the escaping gas from defendants' line and the explosion. Witness was again asked if he

had any interest in the lawsuit and whether it affected his job or his company in any way.

On cross-examination, plaintiff's counsel, over the objection of defendants, was allowed to ask the witness Fox who engaged him to make an examination and inspection of the house for the purpose of testifying. The answer of the witness was that he had been engaged by the engineer of the insurance company. The counsel for defendants then moved for a mistrial, which was denied.

Counsel for defendants have presented in their brief an extended argument and line of authorities showing the immateriality and prejudicial effect of injecting into evidence the fact that a defendant carries insurance. We fully agree with the general rule as announced by the counsel, relative to testimony pertaining to insurance carried by a defendant and such constituting misconduct sufficient to require the declaring of a mistrial, but we do not think defendants' authorities are controlling in the instant case. When counsel for the defendant repeatedly emphasizes the fact that witness Fox was in the employment of an entirely different company than the defendants and had no interest whatever in the outcome of the lawsuit, the jury certainly had a right to know under what authority the witness made the investigation about which he had so fully expressed his opinion and what interest or want of interest this witness had. We do not think that the question asked witness Fox and the answer thereto was sufficient to inform the jury that the defendants were carrying insurance for accidental protection and come within the rule announced by this court. The question and answer was as follows (C.-M. 208):

"Q. Mr. Fox, who engaged you to make an examination of this house and inspection of it for the purpose of testifying? A. The engineer who was making an examination for the insurance company."

What insurance company? Was it the company who had insured the house only or the one that had insured the drilling company against injuries to property and bodily injury, including death, resulting from drilling, operating, or maintenance of an oil well as required by the ordinance of Oklahoma City? We cannot assume that the question and answer would impart to the jury information beyond that contained in the question and answer thereto.

In Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P. (2d) 1033, this court held:

"Ordinarily, reference to defendant's liability insurance by plaintiff's counsel in his opening statement to the jury, or plaintiff's reference thereto from the witness stand, is improper, and is prejudicial to the rights of defendant, and the overruling of defendant's motion for a mistrial on that ground constitutes reversible error.

"On cross-examination of defendant's witness in a personal injury action, the plaintiff may, for the purpose of showing witness' interest in the action, elicit from him the fact that he is employed by defendant's insurer."

In Moy Quon v. M. Furuya Company, 81 Wash. 526, 143 P. 99, that court held:

"As affecting credibility of a witness introduced by defendant in a personal injury suit, it may be shown on his cross-examination that he is an agent of a company with which defendant carried liability insurance"

—and said:

"In a personal injury suit, the fact that the defendant carries liability insurance is wholly immaterial on the main issue of liability. Being essentially prejudicial to the defendant, its wanton intrusion by the plaintiff is positive error constituting grounds for reversal. This is the established rule in this state. * * * This rule, however, was never intended to override the equally positive and salutary principle that a party has the right to cross-examine the witness produced by the adversary, touching every relation tending to show their interest or bias. Many facts wholly immaterial and even positively prejudicial, on the main issue, may be material as touching the credibility of a witness."

This rule has been approved in Wabash Screen Door Co. v. Black, 126 Fed. 721, 61 C. C. A. 639, and many other authorities, including note at 56 A. L. R. pp. 1439-40.

It is further contended that the court's instruction No. 13 was erroneous in submitting to the jury an improper measure of damages.

It seems that the particular part of the instruction objected to was the use of the word "association" in the sentence, "The measure of damages is the pecuniary loss suffered by the husband and by the children, due to their being deprived of the association, care, protection, and support of the deceased parent. * * *" We agree that the word "association" has no place in an instruction to a jury in determining damages for wrongful death where the measure

of damages is the pecuniary loss to the heirs. That sentence, standing alone, would have the effect of telling the jury that they might take into consideration the loss the heirs suffered by reason of being deprived of the association of the wife and mother. In the same instruction and in the latter portion of same, the court had instructed the jury that should they find in favor of the plaintiff, they should then determine the amount of plaintiff's recovery, and that plaintiff would be entitled to recover for the benefit of the heirs and next of kin such sum as would compensate them for pecuniary loss, if any, sustained by them.

In Holmes v. Ellis, 99 Okla. 27, 225 P. 538, this court held:

"Although an instruction may contain an improper statement of the law, if it is clearly apparent from the whole record that no prejudice in fact resulted therefrom, the error will not be considered."

To the same effect is the case of Pierce Oil Corporation v. Puckett, 99 Okla. 228, 226 P. 364; Dalton v. Bilbo, Trustee, 126 Okla. 139, 258 P. 274. In Yellow Taxicab & Baggage Co. v. Pettyjohn, 157 Okla. 232, 11 P. (2d) 487, this court held:

"If an instruction complained of, when considered in connection with other instructions given, fairly covers the legal phases necessary to present to the jury, the cause will not be reversed, even though such instruction, standing alone, does not accurately and fully present to the jury the entire issues in the case."

Taking the instruction as a whole, the jury was confined in fixing the amount of recovery to the pecuniary loss sustained by the husband and children, and we are unable to agree that the jury might have been misled by the word "association" found in the instruction.

It is next contended that the court erred in refusing to instruct the jury on the defendant's theory of the case. This court has frequently held that it is the duty of the trial court to clearly submit, by appropriate instructions, the theory of the defense, in accordance with the evidence, where the evidence tends to support the same, and failure to do so at the request of the defendant constitutes prejudicial error. Forrester v. Jones, 148 Okla. 88, 297 P. 810; Holmboe v. Neale, 69 Okla. 183, 171 P. 334. In the last case cited, this court held that it was reversible error to fail to so instruct the jury, "when in the opinion of the court, after an examination of the entire record, it appears that the error com-

plained of has probably resulted in a miscarriage of justice."

We are unable to determine just what the theory was that was contended for by the defendants and established by testimony and which was not submitted to the jury under proper instructions of the court. It was the contention of the defendants that the escaping gas which caused the explosion did not come from their broken pipe line. The testimony of Earl Chase, Earl Fox, and E. C. Joullian, introduced by the defendants, went only to their opinion as to why they thought it impracticable for the gas escaping from defendants' broken line to be the cause of the explosion in the deceased's house. There was no attempt to show from what other gas line or source the gas could have accumulated in the bathroom of the exploded building, where witness Fox testified that he thought the fire and explosion originated. We are unable to gather from the testimony any particular theory of the defendants which was established by testimony and upon which it became the duty of the court to give instructions other than those given. Instruction C, asked for by the defendants and refused by the court, was in substance included in other instructions given by the court. Instruction B, asked for and refused by the court, in our opinion, does not properly state the law governing the issues presented. The last part of the instruction told the jury that if they found that the injury to Leola McCord might have been caused by some cause other than the gas flowing from the break and leak in the gas line into the house, then and in that event their verdict must be for the defendants. To say that a plaintiff must eliminate every other possible cause of an injury before he can be allowed to recover against the defendant is not a correct expression of the law. Considering the testimony introduced and the instructions construed as a whole, we are unable to say that the failure of the trial court to give an instruction on any particular theory presented or evidence produced had probably confused or misled the jury as to the issues in the case, resulting in an unfair trial.

Defendants next contend that they were deprived of a fair trial by reason of the improper remarks by counsel for the plaintiff in his closing argument, and the court erred in failing to pass squarely upon defendants' objection to the improper remarks. That question is presented here by means of an affidavit of one of the counsel and attached to the motion for new trial, and

placed into the case-made. The affidavit attached to the motion purports to be the exact statement of the plaintiff's counsel, the objections of counsel for the defendants, and the remarks made by the court at the time, and no part of which was taken by the court reporter. There was no request made to the court during the trial, or thereafter, for permission to have the record show what had transpired pertaining to the objections complained of.

We do not think that there has been a sufficient and proper presentation of the matter to this court for review. We have frequently given our views on this same question. In Rosenfield v. Nelson, 102 Okla. 81, 226 P. 1032, this court held:

"Alleged misconduct of the attorney for the prevailing party in making his argument to the jury will not be reviewed by this court, where such statements are not incorporated in the case-made by bill of exceptions or otherwise, except by affidavits filed in connection with motion for new trial."

Again, in Indian Territory Illuminating Oil Co. v. Klaffke, 178 Okla. 62, 61 P. (2d) 669, this court had the same question before it, and held:

"Prejudicial remarks of counsel in his argument to the jury are not available as a ground for reversal unless objected to and exception taken at the time such remarks were made, and the remarks, as well as the objection and exception thereto, must be shown in the record of the proceedings of the trial. The objection is too late if made for the first time in the motion for new trial and by affidavit of opposing counsel"

—and cited with approval, Kaufman v. Boismier, 25 Okla. 252, 105 P. 326, and Madden v. Tilly, 175 Okla. 589, 54 P. (2d) 161, to the same effect.

That this seemingly rigid rule is based upon the principle of fairness and justice to all concerned, is very apparent. Every opportunity is afforded a litigant for making a proper and complete record during the trial of his cause which will show all of the proceedings had. This court is of the opinion that it is unfair, when counsel raise objections to remarks of opposing counsel during the progress of a trial, and wait until some later day to' prepare his own record, which often contains his own version of what was said and done at the time and failing entirely to show that the remarks and statements in his affidavit constitute all that was said in connection with the matter upon which the objection was based. We are, therefore, of the opinion that the rule is based upon sound principles of right. We, therefore, hold that the matter in the instant case has not been sufficiently presented for our consideration.

It is contended that the damages awarded by the jury are excessive and were given under the influence of passion or prejudice. The record does not disclose anything from which we might conclude that the prejudice on part of the jury against the defendants or sympathy in favor of the husband and children of deceased might have unduly influenced the jury against the defendants. If it did show such, it would be our duty to reduce the verdict for excessiveness. New, Receiver, v. McMillan, Administrator, 79 Okla. 70, 191 P. 160.

The judgment against the defendant was in the sum of $6,574.35. The testimony shows that at the time of the accident, the deceased was a maid working for $6 per week and her room and board. The deceased was 28 years of age and it was shown that she had a life expectancy of 47.73 years, and the children were ten and eleven years of age. The defendants contend that the judgment rendered includes damages for pecuniary loss to be sustained after majority, which could be allowed only when based upon actual proof of such loss. As a general proposition, it might be said that this would be a sound rule to follow. This court has said that no fixed rule could possibly be made to give exactly correct compensation with absolute justice in all cases. New, Receiver, v. McMillan, Administrator, supra. The recovery, if any, must be based upon the reasonable expectancy of pecuniary benefit of which the children were deprived by the death of their mother.

In Gypsy Oil Co. v. Green, 82 Okla. 147, 198 P. 851, this court held:

"Under section 5281, Rev. Laws 1910, the right of recovery is not limited to children of a deceased father to losses suffered during their minority, and they may recover for probable pecuniary loss after they reach their majority, but the recovery had, whether by minor or adult children, must be based upon the reasonable expectancy of pecuniary benefit, of which they were deprived by the death of their father."

There could be no proof that the deceased would have lived during her entire life expectancy, or that she would have continued to contribute to the support of these children after they had arrived at their

majority. This was a question for the jury to determine, based upon the testimony.

It has been the rule of this court, where there is evidence to sustain the verdict as to the amount, and nothing appears in the record tending to show that the minds of the jury were inflamed so as to induce the belief that the jury was actuated by passion, prejudice, partiality, or corruption, the verdict will not be set aside as excessive, on appeal. There being no absolute standard to measure damages for personal injuries, a wide latitude of discretion is necessarily left to the good sense and discretion of the jury fixing the award. Yellow Cab Operating Co. v. Spelce, 177 Okla. 571, 61 P. (2d) 672; 4 C. J. 869.

It is contended that the verdict and judgment is not sustained by sufficient evidence. That plaintiff's evidence established two inconsistent sets of facts; under one, the defendants would be liable; under the other, defendants would not be liable. It is contended that it became the duty of the court to direct a verdict for defendants. We are unable to agree with this contention.

From the petition filed by the plaintiff and the testimony introduced in support of same, it is very apparent that the theory of the plaintiff, as to the cause of the explosion, was that the high-pressure gas line of defendants, laid in the alley in close proximity to the sewer line leading to the residence occupied by deceased, afforded sufficient opportunity for the gas from the broken gas line to pass along the sewer line or through the crevices of the earth and through the air into the house where the explosion occurred. Testimony upon that theory was introduced by the plaintiff. John L. Lynn, district fire chief, testified that in his opinion the explosion was caused by escaping gas from defendants' high-pressure line in the alley and made his written official report of the matter to that effect. This testimony was supported by that of other witnesses. Witness McAlpine was an assistant fire chief, and was put on the stand as a witness for the plaintiff. It would be only natural, as contended by plaintiff's counsel, that the testimony of this witness would be in accord with the report of the accident on file in his office. This witness had not been interviewed. His testimony was entirely inconsistent with the report of the fire department and was a surprise to plaintiff's counsel. On attempt to cross-examine the witness as a hostile witness, an objection was sustained. Under these circumstances, we may reasonably conclude that the testimony of witness McAlpine was no part of the theory presented or relied upon by plaintiff. It would indeed be a severe rule if a witness introduced by one party in giving adverse testimony on some point would cause the litigant to lose the effect of all the testimony in his favor on the ground of conflicting theories. We know of no such rule of law. This court had occasion to consider this question in H. L. Canady Company v. McDougald, 135 Okla. 63, 273 P. 1000, and held:

"A party is not concluded by the statement of any witness, but has the right to introduce other competent evidence, to show the real facts, although such testimony may incidentally contradict or tend to impeach the testimony of a previous witness. And such latter testimony will create an issue of fact upon which the State Industrial Commission hearing the proceeding, or a court or jury trying the case, is authorized to hold adversely to the former testimony. This is the rule without reference to whether the party calling the former witness is taken by surprise or not by his testimony."

This holding is supported by 28 R. C. L. 643, section 227; 70 C. J. p. 1156, section 1341.

We have examined the record in this case, and have given due consideration to each contention presented by the defendants, and we are not convinced that any of the errors complained of have resulted in a miscarriage of justice, or constitute a substantial violation of a constitutional or statutory right, and the judgment is therefore affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, and HURST, JJ., concur. GIBSON, J., dissents.